[Civ. No. 22724. First Dist., Div. One. Sept. 8, 1966.]

ROSE POON, Plaintiff, v. WILLIAM J. POON, Defendant and Respondent; PAUL W. POON, as Administrator, etc., Movant and Appellant.

Joseph L. Bortin for Movant and Appellant.

Bowman, Trant & Colthurst, W. Scott Barrett and Joseph P. Bingaman for Defendant and Respondent.

MOLINARI, J.—This is an appeal by Paul W. Poon, the administrator of the estate of Rose Poon, from that portion of the order of the trial court denying his motion to substitute himself as plaintiff in an action brought by Rose Poon against William Poon and other named defendants.[1] This motion was made by appellant following the death of Rose Poon, which occurred during the course of trial. The sole issue raised on this appeal is whether the trial court erred in refusing to allow the requested substitution.

### The Record

This action was commenced on October 10, 1962 by the filing of a complaint by Rose Poon against William Poon and various other individuals, banks, and savings and loan associations. This complaint, which was entitled ''Complaint for Divorce,'' set forth three causes of action. The first contained a statement of the statistical facts required in an action for divorce, allegations that William had treated Rose with extreme mental and physical cruelty, and an allegation that the community property of Rose and William consisted of ''bank accounts, real property, furniture, furnishings, stocks, bonds, and miscellaneous items which plaintiff believes are concealed by the said defendant.'' As a ''Second Cause of Action for Fraud'' Rose alleged that prior to March 29, 1954 she was a coowner in fee simple of certain real property situated in San Francisco and that she possessed a community interest in two insurance policies on the life of her husband; that William, by fraud and misrepresentation, induced Rose to execute an agreement conveying to him all of Rose's interest in this realty and these insurance policies; that Rose delivered to William deeds to this realty; that William misrepresented to Rose that his execution of a promissory note in the amount of $2,500 was fair and reasonable consideration to Rose for her

---

[1]To the effect that such an order is appealable see *Walsh* v. *Superior Court*, 92 Cal.App. 454, 456 [268 P. 442] and *Majors* v. *County of Merced*, 207 Cal.App.2d 427, 432 [24 Cal.Rptr. 610].

interest in the realty and insurance policies; that in fact William knew that the promise to pay $2,500 was not fair and reasonable; that in reliance upon William's representations, Rose conveyed her interest in the realty and insurance policies to William; and that William has continued to receive income from the realty and has deposited such income with one or more of the savings and loan associations and banks named as defendants in the action. As a "Third Cause of Action to Establish Trust and to Quiet Title" Rose alleged that a confidential relationship existed between her and William; that notwithstanding this relationship William misrepresented and defrauded Rose of her rights in three specifically described parcels of realty; and that these parcels stand in the name of William and several of the other individual defendants, who continue to receive the income and benefit from these parcels. Based upon these three causes of action Rose prayed for a decree of divorce from William, for custody of their minor child, for support for herself and the minor child, and for attorney's fees and costs. In addition she prayed that the community property of the parties be awarded to her; that the agreement and deeds executed by her be set aside; that the real property interest of the parties be awarded to her; that title to the real property be quieted in her; and that an accounting of all income from the properties of Rose and defendants be made.

On October 31, 1962 William filed an answer to Rose's complaint in which he essentially denied all of the allegations thereof. Accompanying his answer, William filed a cross-complaint against Rose for divorce. In this cross-complaint William alleged that there was no community property and that he and Rose had executed a property settlement agreement settling their respective property rights. Accordingly, William prayed that the court determine that there was no community property of the parties and, alternatively, if the court determined that there was community property, that the same be equitably divided.

On April 22, 1964, following the filing of Rose's answer to William's cross-complaint, and after some discovery had been undertaken, a pretrial conference was held, resulting in a pretrial conference order which labelled the action as one for divorce and set forth the issues to be determined as follows: "1. Whether either or both parties are entitled to a divorce. 2. The nature, character, and extent of all of the property of the parties whether separate, community, joint tenancy, or what

not, and the division thereof. 3. Whether the plaintiff and cross-defendant is entitled to support. 4. Custody of minor child and support thereof. 5. Whether the plaintiff and cross-defendant is entitled to counsel fees and costs.''

On June 8, 1964 the cause proceeded to trial as between Rose and William, they being the only parties who had appeared in the action. At the commencement of the trial, the trial court, noting that there had been a previous discussion in chambers, made the following statement: ''Now, I think what we have agreed, then, gentlemen, is that the plaintiff may establish a prima facie case for divorce; then the next issue to be determined then will be the validity of the property settlement agreement which was entered into sometime in 1954.'' Counsel for Rose orally acquiesced to this statement. No statement or objection was made by William's counsel. Following brief testimony by Rose and by a corroborating witness as to the issue of extreme cruelty, the cause proceeded on the issue of the validity of the property settlement agreement. On July 9, 1964, following six days of trial, the court was informed that William had killed Rose and the cause was ordered off calendar. Thereafter, on August 5, 1964, appellant noticed a motion for his substitution as plaintiff in the instant action. In support of this motion, Rose's attorney filed a declaration in which he stated that Rose had been killed by William on July 9, 1964 and that appellant had been duly appointed administrator of her estate. Subsequently, appellant's motion came on for hearing and was denied by the court in an order which recited that the denial was based on the ground that the court lacked jurisdiction to order the requested substitution. It is from this order that appellant appeals.[2]

### Applicable Law

The starting point in our determination of whether the trial court erred in refusing to substitute appellant into this action in the place of the deceased plaintiff is Code of Civil Procedure section 385, which provides in pertinent part as follows: ''An action or proceeding does not abate by the death, or any disability of a party, . . . if the cause of action survive

---

[2]In addition to disposing of appellant's motion for substitution, the November 12, 1964 order of the trial court, among other things, also denied appellant's motion (actually, this motion was noticed by Rose's attorney, Joseph Bortin) for attorney's fees for services rendered on behalf of Rose prior to her death. Although appellant's notice of appeal recited that appellant was also appealing from that portion of the trial court's order denying attorney's fees to Rose's counsel, appellant, in his opening brief, states that he is abandoning that facet of this appeal.

or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest.'' However, since this section, which has been interpreted as *requiring* the trial court to allow substitution of the representative of the deceased party if the cause of action on which the suit was commenced by the decedent during his lifetime survives (*Majors* v. *County of Merced,* 207 Cal.App. 2d 427, 434 [24 Cal.Rptr. 610]), does not indicate what causes of action do survive (*Estate of Baker,* 170 Cal. 578, 586 [150 P. 989]; *Clark* v. *Goodwin,* 170 Cal. 527, 530 [150 P. 357, L.R.A. 1916A 1142]; *Myers* v. *Harrington,* 70 Cal.App. 680, 689 [234 P. 412]), our inquiry as to whether the instant action survived Rose's death must be directed elsewhere.

Initially we note that appellant concedes that upon Rose's death the jurisdiction of the trial court to enter a decree of divorce was terminated. This concession is based upon the rule of long-standing that a divorce action does not survive the death of either spouse. (*McClenny* v. *Superior Court,* 62 Cal.2d 140, 144 [41 Cal.Rptr. 460, 396 P.2d 916]; *Stevenson* v. *Superior Court,* 62 Cal.2d 150, 152 [41 Cal.Rptr. 466, 396 P.2d 922]; *Darter* v. *Magnussen,* 172 Cal.App.2d 714, 718 [342 P.2d 528]; *Bevelle* v. *Bank of America,* 80 Cal.App.2d 333, 334 [181 P.2d 730]; *Hamilton* v. *Hamilton,* 83 Cal.App.2d 771, 773-774 [189 P.2d 722]; *Kellett* v. *Marvel,* 9 Cal.App.2d 629, 630 [51 P.2d 185]; *Kirschner* v. *Dietrich,* 110 Cal. 502, 504 [42 P. 1064].)[3] Additionally upon the authority of the *Darter,*

---

[3]Although Prob. Code § 573, following its 1961 amendment, would appear to make all causes of action, including an action for divorce, survivable (for this interpretation of the effect of § 573 see Witkin, Cal. Procedure, (1965 Supp.) Actions, §§ 177A, 181, pp. 288, 290), since the *McClenny* and *Stevenson* cases, which were decided in 1964, reiterated the pre-1961 rule as to the nonsurvivability of an action for divorce, it is apparent that the 1961 amendment to § 573 does not merit such a broad interpretation. This section provides as follows: ''Except as provided in this section no cause of action shall be lost by reason of the death of any person but may be maintained by or against his executor or administrator. In an action brought under this section against an executor or administrator all damages may be awarded which might have been recovered against the decedent had he lived except damages awardable under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant. When a person having a cause of action dies before judgment, the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived, and shall not include damages for pain, suffering or disfigurement. This section is applicable where a loss or damage occurs simultaneously with or after the death of

*Hamilton* and *Bevelle* cases, appellant concedes that upon Rose's death and the abatement of her action for divorce the trial court also lost jurisdiction to apportion the community property of the parties. (See also Civ. Code, § 146, which gives a court power to divide the community property where the marriage has been dissolved.)

However, while conceding that the instant action, insofar as it was an action for divorce and for division of the community property, abated with Rose's death, appellant contends that the second and third causes of action of Rose's complaint by which she sought to recover her community share of certain realty and insurance policies which she had agreed to transfer and had in fact transferred to William survived Rose's death.

Prior to 1961 and the amendment to Probate Code section 573 it was recognized by virtue of Civil Code section 954 and Probate Code section 574[4] that all causes of action relating to the recovery of property and to the setting aside of a fraudulent conveyance survived. (1 Witkin, Cal. Procedure (1954) Actions, § 179, p. 693; see *Hardy* v. *Marcus*, 15 Cal.App.2d 244, 244-245 [59 P.2d 421]; *Harris* v. *Harris*, 57 Cal.2d 367, 370 [19 Cal.Rptr. 793, 369 P.2d 481]; *Vragnizan* v. *Savings Union etc. Co.*, 31 Cal.App. 709, 712-714 [161 P. 507]; see also, with respect to the assignability of a cause of action to recover property obtained by fraud or to set aside a fraudulent conveyance: *Michal* v. *Adair*, 66 Cal.App.2d 382, 388-389 [152 P.2d 490]; *American Trust Co.* v. *California etc. Ins. Co.*, 15 Cal.2d 42, 67 [98 P.2d 497]; *Jackson* v. *Deauville Holding Co.*, 219 Cal. 498, 502 [27 P.2d 643].) In *Harris* it was held that the right to set aside a gift of community property made by a husband without the wife's consent survived the wife's death and could be exercised by her personal representative. Like-

---

a person who would have been liable therefor if his death had not preceded or occurred simultaneously with the loss or damage. Nothing in this section shall be construed as making assignable things in action which are of such a nature as not to have been assignable prior to the enactment of the 1961 amendment to this section.''

[4]Civ. Code § 954 provides as follows: ''A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office.'' Prob. Code § 574, prior to its repeal in 1961, provided in pertinent part as follows: ''Executors and administrators may maintain an action against any person who has wasted, destroyed, taken, or carried away, or converted to his own use, the property of their testator or intestate, in his lifetime, . . .''

wise in *Vragnizan,* where the contentions were quite similar to those made in the present case, it was held that an action to recover one-half of the value of certain property allegedly concealed by a husband from his wife upon the settlement of their property rights during the pendency of an action for divorce did not abate with the death of the husband because the nature of the action was one for the recovery of an interest in property founded upon contract and not purely a personal action for tort.

We perceive nothing in the enactment of the 1961 amendment to Probate Code section 573 which would change the long-established rule that a cause of action for the violation of a property right survives the death of the owner of the right. (See *Harris* v. *Harris, supra,* p. 370.) It is clear from a reading of section 573 of the Probate Code, which was amended to state a comprehensive rule of survivability,[5] that it has broadened rather than restricted the general rule of survivability. In this regard, Witkin, alluding to the language of Probate Code section 573 that "no cause of action shall be lost by reason of the death of any person but may be maintained by or against his executor or administrator," makes the following comment: "The classification of survivable and nonsurvivable causes of action is now obsolete, for *all causes of action now survive* under the comprehensive statute: . . ." (Witkin, Cal. Procedure (1965 Supp.) Actions, § 177A, p. 288.) Although, as we have pointed out in footnote 3, the rule of survivability is not as broad as stated by Witkin in view of the decisional law that an action for divorce involving the status of the parties abates upon the death of one of the spouses, there can be no question, under both the statutory and decisional law of this state, that property actions of every kind, including those arising out of the violation of a right of property, survive. Accordingly, we conclude that appellant's position that the second and third causes of action of Rose's complaint survived her death is meritorious.

Respondents, in attempting to justify the trial court's order refusing to substitute appellant in this action, argue that Rose "abandoned any separate causes of action other than divorce at the pretrial conference," and that "In any event the determination of property rights as set forth in the

[5]As noted by Witkin in Cal. Procedure, (1965 Supp.) Actions, § 177A, p. 288, the 1961 Legislature, acting on the recommendation of the California Law Revision Commission, modernized the law by repealing Civ. Code § 956, Prob. Code § 574, Veh. Code § 17157, and amending Prob. Code §§ 573 and 707, and Code Civ. Proc. §§ 376 and 377.

purported second and third causes of action were clearly incidental to the divorce action, and arose out of the marital relation.'' We cannot accept either of these arguments. As to respondents' contention that the second and third causes of action of Rose's complaint were abandoned at the pretrial conference, we note that while the pretrial conference order refers to the action as one for divorce and fails to specifically list among the issues to be determined those issues relating to the second and third causes of action, the order does list as one of the issues to be decided ''The nature, character, and extent of all of the property of the parties whether separate, community, joint tenancy, or what not. . . .'' We are of the opinion that this statement encompasses the issues requiring adjudication under the second and third causes of action in Rose's complaint. Particularly is this conclusion true in view of the fact that the majority of the trial prior to Rose's death was devoted to the issues raised by the second and third causes of action in Rose's complaint.

■ As to respondents' contention that the issues raised by the second and third causes of action in Rose's complaint were merely incidental to the divorce action and arose out of the marital relation, we point out initially that the fact that a cause of action arises out of a marital relationship does not prevent survival of that cause of action upon the death of one of the spouses. (See *Vragnizan* v. *Savings Union etc. Co.,* *supra,* pp. 712-714; *Harris* v. *Harris, supra,* p. 370.) ■ Secondly, since the question of the survivability of a cause of action is determined solely by a consideration of the particular cause of action in question, the fact that the cause of action as to which the survival issue is raised is pleaded in conjunction with other nonsurviving causes of action should be immaterial in determining if the former survives.

■ Moreover, in the instant case, although Rose did in fact seek a divorce as well as a determination that the property settlement agreement was invalid, it is apparent that the court could have denied relief in the form of a divorce and could at the same time have determined the validity of the property settlement agreement, which by its terms purported to bind the parties ''even though they may continue living together.'' Accordingly, we conclude that in the instant case the issues raised by the second and third causes of action of Rose's complaint were not incidental to the divorce action and that in any event, since the second and third causes of action, when considered apart from the action for divorce, were survivable,

the fact that they were joined with a cause of action for divorce does not defeat their survivability.

The appeal from that portion of the order denying counsel fees to Rose Poon's attorney is dismissed. The portion of the order denying appellant's motion to be substituted as plaintiff in the action is reversed with directions to the trial court to grant appellant's motion for substitution. Appellant shall have his costs on appeal.

Sullivan, P. J., and Sims, J., concurred.